1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN E. BARNHOUSE,

                                    Plaintiff,

          v.

ELDON VAIL, RONALD D. FRAKER,
JAMES RENO, MICHAEL
CHRISTENSEN, BRIAN ZAVODNY,
STEVE RAMSEY, ALVA MOSELEY,
JAMES McLEAN, MALCOLM
STARK, HENDRICK, and DARREN
HEAWARD,

                                    Defendants.

No. C09-5154 RJB/KLS

**REPORT AND RECOMMENDATION**
**Noted for:  April 29, 2011**

          Presently before the court is the Motion for Summary Judgment of Defendants Ronald D.

Fraker, Darren Heaward, Alva Moseley, James McLean, Steve Ramsey, James Reno, Malcolm

Stark, Eldon Vail, and Brian Zavodney.[1]  ECF No. 130.  Although he was given two extensions

of time within which to file a response to Defendants' motion, Plaintiff has failed to do so.  *See*

ECF Nos. 133 and 135.  His failure to file papers in opposition may be deemed as an admission

that the Defendants' motion has merit.  Local Rule 7(b)(2).

---

[1] Unexecuted returns of service were received by the U.S. Marshal for Defendants Christensen and Hendrick (referred to as Hendricks by Defendants), marked "insufficient address, return to sender, no longer employed at CBCC."  ECF No. 83 and 84.  On March 8, 2010, the court directed Plaintiff to provide alternative service addresses for Defendants Christensen and Hendricks so that another attempt at service could be made.  ECF No. 114.  Plaintiff has not complied with the order.  As they have never been served, the Court lacks personal jurisdiction over Defendants Christensen and Hendrick.

REPORT AND RECOMMENDATION - 1

Having reviewed the motion, opposition and supporting declarations and balance of the record, the court recommends that the motion for summary judgment be granted, except as to Plaintiff's claims against Defendants James McLean and Malcolm Stark.

## BACKGROUND

At the time this lawsuit was filed, Plaintiff was a Washington State prison inmate incarcerated at the Clallam Bay Corrections Center (CBCC).[2]   Plaintiff claims that his Eighth Amendment rights were violated by the use of excessive force when he asked for but was denied "protective custody" from prison guards (Michael Christensen, Jeff Kettel and Eric Young), whom he had previously sued in Case No. C08-5553RJB.[3]   He alleges that six unknown prison guards assaulted him in retaliation for filing that lawsuit and that during the assault, they yelled: "this is for all the grievances and the lawsuit you filed on Christensen and Kettle."  Plaintiff claims that the assault left him with an injured neck and numbness in his face, left side and arm. Of the six guards who assaulted him, Plaintiff has identified only one defendant as being involved in the assault on March 4, 2009 – James McLean.  Although he alleges later in his complaint that Michael Christensen assaulted him on May 6, 2009, he provides alleges no facts surrounding this allegation.   Plaintiff also alleges that he was infracted with false reports and improperly placed in isolation and on a "6 month program in Administrative Segregation for over 10 months," in violation of his Fourteenth Amendment due process rights.

Plaintiff also claims that the conduct described above was done in retaliation for his grievances and litigation activities.  He seeks $200,000.00 and punitive damages of $100,000.00

---

[2] The court's docket reflects that Plaintiff is no longer incarcerated and is residing in Irondale, Washington.

[3] That case was dismissed without prejudice for failure to exhaust administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).  ECF No. 62.  The court's dismissal was upheld by the Ninth Circuit Court of Appeals.  ECF No. 90.

REPORT AND RECOMMENDATION - 2

1    against each defendant "jointly and severally," a declaration that his rights have been violated,

2    and an injunction to "make prison guards stop beating and assaulting" him and putting false

3    reports on his record, to remove false reports from his file, and to move him to Shelton Prison

4    where none of the defendants work and Plaintiff can be close to his family.[4]

5                            **STANDARD OF REVIEW**

6

7            Summary judgment should be granted when "the pleadings, the discovery and disclosure

8    materials on file, and any affidavits show that there is no genuine issue as to any material fact

9    and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The moving

10   party has the initial burden of production to demonstrate the absence of any genuine issue of

11   material fact.  *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020,

12   1023-24 (9th Cir.2004).  A nonmoving party's failure to comply with local rules in opposing a

13   motion for summary judgment does not relieve the moving party of its affirmative duty to

14   demonstrate entitlement to judgment as a matter of law.  *Martinez v. Stanford*, 323 F.3d 1178,

15   1182-83 (9th Cir. 2003).

16

17           "If the moving party shows the absence of a genuine issue of material fact, the non-

18   moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine

19   issue for trial."  *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex

20   Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)).  The non-

21   moving party may not rely upon mere allegations or denials in the pleadings but must set forth

22

23   _____

     [4] As it is apparent that Plaintiff is no longer incarcerated and is not in custody of any of the named Defendants, any
24   claim for injunctive relief is moot. *Weinstein v. Bradford*, 423 U.S. 147, 148-49, 96 S. Ct. 347, 46 L.Ed.2d 350
     (1975) (prisoner's due process claim moot once he obtained full release from prison supervision); *Dilley v. Gunn*, 64
25   F.3d 1365, 1368-69 (9th Cir.1995) (prisoner's suit for injunctive relief moot upon his transfer to another prison);
     *Chronicle Publ'g Co. v. Rison*, 962 F.2d 959, 960 (9th Cir.1992) (same); *Johnson v. Moore*, 948 F.2d 517, 519 (9th
26   Cir.1991) (same).  Plaintiff cannot claim any exception to the mootness doctrine, as there is no indication he will be
     returned to his former place of incarceration and subjected to the same conditions.

REPORT AND RECOMMENDATION - 3

specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

Where, as here, the nonmoving party is pro se, a court must consider as evidence in opposition to summary judgment all contentions "offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the party appearing pro se] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (citation omitted), *cert. denied*, 546 U.S. 820, 126 S. Ct. 351, 163 L.Ed.2d 61 (2005).

On summary judgment, a court must view all evidence and any inferences therefrom in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996) (citation omitted).  A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).  The Court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001).  This is true even when a party appears pro se. *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007).  A court construes a pro se plaintiff's pleadings liberally. *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005).

## STATEMENT OF FACTS

The incident giving rise to Plaintiff's complaint occurred on March 4, 2009, when he was removed from his cell at the CBCC.  The parties have widely divergent views of what occurred on that day.  In his verified complaint, Plaintiff states that he was in fear for his safety and had

REPORT AND RECOMMENDATION - 4

asked Sgt. Reno for protective custody from the prison guards he sued in Case No. C08-5553RJB.  After Sgt. Reno laughed at him, Plaintiff went into his cell to pack his property. Plaintiff states that six guards entered his cell, asked him to come of out his cell and face the wall.  He claims that he put down his cane and complied with this request and after he faced the wall, the six unnamed prison guards put handcuffs on him and began to hit, kick, punch, and throw him to the ground, "while yelling your going down this is for all the grievances and the law suit you filed on Christensen and Kettle." *Id.*, pp. 4-5.  Plaintiff states that the guards put their knees on his head and neck and twisted his hands until they bled, that his hand was cut, his neck was injured and he suffered numbness in his face, left side, and left arm.  He also says that the guards who assaulted him refused to write a report and refused to give him their names.  *Id.*, p. 5.   Later in his complaint, however, he states that Defendant McLean "made it clear, when he stated, as he assaulted, and beat me, (this is for all the grievances (30) I filed on C/O Christensen, and Kettle,) (and law suits you filed).  *Id.*, p. 6.

In his complaint, Plaintiff sought injunctive relief "as soon as you receive this complaint because on August 31, 2006 (3) three prison guards did assault me and cause an injury irreparable injury and that on March 4th 2009 in retaliation to grievances and lawsuit, C08-5553RJB prison guards did assault me again and did cause me more irreparable injury and that on May 6th 2009 defendant Christensen did put hand cuff's [sic] on me and did assault me (see Video) of assault on 5/6/09.  *Id.*, pp. 7-8.  The court has not been supplied with any video.[5]

On the other hand, Defendant Reno, a Corrections Sergeant at CBCC, states that at approximately 9:55 p.m. on March 4, 2009, he received a telephone call from Corrections Officer Adler informing him that Plaintiff was belligerent, threatening, and requesting to go to

---

[5] As noted above, the Court lacks personal jurisdiction over Defendant Christensen.

REPORT AND RECOMMENDATION - 5

1    the IMU.  ECF No. 130-1, p. 2, ¶ 5 (Declaration of James H. Reno).  When Defendant Reno

2    arrived, Plaintiff was throwing things around in his cell.  Plaintiff threw his key in Defendant

3    Reno's direction and said "f*** you."  When Defendant Reno asked Plaintiff if he was refusing a

4    cell assignment, Plaintiff again replied "f*** you."  Defendant Reno called for backup and when

5    backup arrived, he directed Plaintiff to exit his cell and stand for search.  *Id.*; ECF No. 130-1, p.

6    5.  According to the declarations and incident reports detailing the events of March 4, 2009,

7    Defendants McLean, Stark and Hendricks[6] responded to Defendant Reno's request for back-up.

8    ECF Nos. 130-1, pp. 10 and 20.

9

10        In his declaration and Staff Report on Use of Force, Defendant Stark confirms that he

11    aided Defendants McLean and Hendricks in taking Plaintiff down to the floor.  ECF No. 130-1,

12    p. 17, ¶ 5; ECF No. 130-1, p. 20.  Defendant Stark states that he grabbed Plaintiff's right

13    shoulder with his left hand and Plaintiff's left shoulder with his right hand, and that he placed

14    Plaintiff on the floor by pushing down lightly on Plaintiff's upper shoulder and neck until

15    restraints were applied.  ECF No. 130-1, p. 20.

16

17        In his declaration and CBCC Incident Report, Defendant McLean states that Plaintiff

18    kicked him in his left knee.  ECF No. 130-1, p. 8, ¶ 5; ECF No. 130-1, p. 10.  Defendant McLean

19    also confirms that he aided Defendant Hendricks in taking Plaintiff to the floor.  Defendant

20    Hendricks used "an arm[illegible] and gooseneck," while Defendant McLean "grabbed some hair

21    and his [Plaintiff's] left arm."  Defendant McLean also states that during the escort to IMU,

22    Plaintiff attempted to turn on staff and Corrections Officer Richards placed a spit sock on

23    Plaintiff.[7]  ECF No. 130-1, p. 10.

24

25

26    ────────────────
[6] As noted above, the Court lacks personal jurisdiction over Defendant Hendricks.

[7] Corrections Officer Richards is not a party to this action.

REPORT AND RECOMMENDATION - 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

After Plaintiff was taken to the IMU, Defendant McLean sought medical attention for the injury to his knee.  ECF No. 130-1, p. 7, ¶ 5.  According to the Accident/Injury Report attached to Defendant McLean's declaration, no first aid was rendered and Defendant McLean was advised to seek medical care if needed.  ECF No. 130-1, p. 11.

Defendants Reno, McLean, and Stark state that at no time during the incident on March 4, 2009, did they say, "This is for all the grievances and the lawsuit you filed on Christensen and Kettle."  They state that they did not hear any other officer make such a statement.   ECF No. 130-1, pp. 3, 8, and 17 (respectively).    They also state that they did not remove Plaintiff from his cell in order to retaliate against him for filing grievances or a lawsuit.

Plaintiff was issued a serious infraction alleging a violation of WAC 137-25-030 subsection 704 for Assault on a Staff Member.  ECF No. 130-1, p. 22, ¶¶ 3-4 (Declaration of Darren Heaward).  At the May 21, 2009 infraction hearing, the infraction was dismissed because the written reports were based on second hand information.  *Id.*, ¶ 4.  Defendant Heaward, the Hearing Officer, had not been provided with Defendant McLean's report, the officer Plaintiff was accused of assaulting, and he had not been provided with a copy of the medical records showing that Defendant McLean had been injured during the assault.  Defendant Heaward states that he dismissed the infraction as a result of these technicalities and not because Plaintiff was found not guilty.  In fact, Defendant Heaward made no finding as to whether Plaintiff had actually assaulted Defendant McLean.  Plaintiff did not receive any discipline as a result of the infraction.  *Id.*

Plaintiff alleges that Defendant Heaward had him placed in isolation based on false reports that Plaintiff had assaulted staff.  He claims that Eldon Vail and Steve Ramsey put him in

REPORT AND RECOMMENDATION - 7

1    isolation and on a sixth month administrative segregation program for over ten months based on

2    Defendant Heaward's false reports.  ECF No. 48, pp. 5-6.

3        On June 4, 2009, Defendant Moseley, the Correctional Unit Supervisor at CBCC, made

4    an initial recommendation to demote Plaintiff's classification level to maximum custody.

5    Defendant Moseley based his recommendation on Plaintiff's overall attitude and because

6    Plaintiff had received six major infractions between November of 2008 and June of 2009 (not

7    including the infraction Plaintiff received on March 4, 2009).  ECF No. 130-1, p. 25, ¶ 5

8    (Declaration of Alva D. Mosely).   According to Defendant Moseley, Plaintiff's assault on a staff

9    member was extremely concerning to DOC and merited a demotion; however, that particular

10   infraction was not the deciding factor in Defendant Moseley's recommendation that Plaintiff's

11   classification level be made.  Defendant Moseley states that his recommendation was also not

12   motivated by a desire to punish Plaintiff for filing lawsuits or grievances.  *Id.*

13       Defendant Brian E. Zavodny, a Corrections and Custody Officer at CBCC, was not

14   involved in removing Plaintiff from his cell or in the use of force on March 4, 2009.  ECF No.

15   130-1, p. 28, ¶ 3 (Declaration of Brian E. Zavodny).

16                                    **DISCUSSION**

17       To state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) the

18   defendant must be a person acting under color of state law; and (2) his conduct must have

19   deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of

20   the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other*

21   *grounds, Daniels v. Williams*, 474 U.S. 327, 330-31 (1986).  Implicit in the second element is a

22   third element of causation.  *See Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 286-87

23   (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert. denied*, 449 U.S. 875

REPORT AND RECOMMENDATION - 8

(1980). When a plaintiff fails to allege or establish one of the three elements, his complaint must be dismissed. The Civil Rights Act, 42 U.S.C. § 1983, is not merely a "font of tort law." *Parratt*, 451 U.S. at 532. The plaintiff may have suffered harm, even due to another's negligent conduct, but that does not in itself necessarily demonstrate an abridgement of constitutional protections. *Davidson v. Cannon*, 474 U.S. 344 (1986).

**A.      Eighth Amendment Use of Force Claim**

The Eighth Amendment standards for claims of excessive force against inmates by prison officials are well-established. In determining whether the use of force against a prisoner violates the Eighth Amendment, the core inquiry is whether the force was applied "in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992). In order to determine whether force is excessive and violative of the Eighth Amendment, the court must evaluate both the objective and subjective components of the alleged violation. *Id.* Therefore, the extent of the injury suffered by the Plaintiff is a relevant but not dispositive factor in determining whether the force used was appropriate. *Id.* However, the Eighth Amendment does not reach *de minimis* uses of physical force. *Id.*

The subjective component relates to whether or not the defendants had a wanton state of mind when they engaged in the use of force. In evaluating whether the use of force was wanton or unnecessary, the court should consider the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the defendants, and any efforts made to temper the severity of a forceful response. *Id.*

In their declarations, Defendants Reno, McLean and Stark state that Plaintiff was belligerent, aggressive, threatening and assaultive and that the use of force was necessary to

REPORT AND RECOMMENDATION - 9

remove Plaintiff from his cell.   Defendant McLean states that Plaintiff kicked him in the knee

and that he sought medical care for the injury.   In his verified complaint, Plaintiff states that

when he was ordered to leave his cell, he complied with the request and voluntarily placed

himself against the wall.   Viewing the evidence in the light most favorable to Plaintiff and

assuming the facts as stated in his verified complaint as true, Plaintiff has established a genuine

issue of material fact as to whether there was a need for the application of force and the amount

of force used.   However, Plaintiff has offered no evidence, in his verified complaint or otherwise,

that any of the named Defendants, other than James McLean, was involved in the incident of

March 4, 2009.   It has been established through the declarations of Defendants Reno, McLean

and Stark, that they and Defendant Hendricks were the only officers involved in removing

Plaintiff from his cell on March 4, 2009.[8]   Defendant Zavodny was not involved in the incident

at all.   Plaintiff offers no evidence to dispute this.

Defendants Reno, McLean, and Stark deny that the force they used was excessive.

Defendant Reno did not physically contact Plaintiff at all and Defendants McLean and Stark

state that the force they used to take Plaintiff to the ground was minimal and was necessary as

Plaintiff continued to resist and yell obscenities.   Defendants Reno, McLean, and Stark deny that

they said:  "This is for all the grievances and the lawsuit you filed on Christensen and Kettle."

They also deny hearing any other officer make such a statement.  *See,* ECF No. 130-1, pp. 3, 8,

and 17 (respectively).    With the exception of Defendant McLean, Plaintiff offers no proof, in

his verified complaint or otherwise, to dispute this evidence.

---

[8] According to the CBCC Incident Report prepared by Defendant McLean, Corrections Officer Richards placed a
spit sock on Plaintiff during Plaintiff's escort to the IMU.  ECF No. 130-1, p. 10.  However, Officer Richards is not
a party to this action.

REPORT AND RECOMMENDATION - 10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

With regard to James McLean, Plaintiff states in his verified complaint that Defendant McLean "made it clear, when he stated, as he assaulted, and beat me, (this is for all the grievances (30) I filed on C/O Christensen, and Kettle,) (and law suits you filed).  ECF No. 48, p. 6.  Defendants Reno, Stark and McLean admit to being present and Defendants Stark and McLean admit that they were involved in taking Plaintiff down.  ECF No. 130-1, p. 17; ECF No. 130-1, p. 10.  Viewing this evidence in the light most favorable to Plaintiff, as this Court must do, the undersigned concludes that Plaintiff has created a genuine issue of material fact as to whether Defendants McLean and Stark maliciously or sadistically used excessive force to cause Plaintiff harm.   No similar issue has been created as to Defendant Reno, who testified that he did not touch Plaintiff or as to Defendant Zavodny, who testified that he was not involved at all in the incident.

Accordingly, the undersigned recommends that Plaintiff's Eighth Amendment claims against Defendants Reno, Hendricks, and Zavodny be dismissed with prejudice.  The motion for summary judgment on this claim of Defendants McLean and Stark should be denied.

**B.     Fourteenth Amendment Due Process Claim**

Plaintiff claims that his Fourteenth Amendment due process rights were violated when Defendant Heaward used "false reports and other staff to improperly house" him in IMU.  ECF No. 48, p. 5.  He further alleges violation of his due process rights when Defendants Vail and Ramsey placed him in isolation and on a "6 month program in 'Administrative Segregation' for 10 months" based on false information.  *Id.*, p. 6.

In a prison disciplinary proceeding where a state created liberty is at issue, a prisoner is entitled to:  (1) written notice of the charges against him at least 24 hours in advance of the hearing; (2) an opportunity to call witnesses and present documentary evidence in his defense,

REPORT AND RECOMMENDATION - 11

provided that doing so will not be unduly harmful to institutional safety or correctional goals; and (3) a written statement setting forth the disciplinary board's findings of fact. *Wolff v. McDonnell*, 418 U.S. 539, 563-66, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974).  Plaintiff does not allege that he did not receive written notice of the charges 24 hours in advance, that he was denied the opportunity to call witnesses, or that he did not receive a written statement of the findings.   Thus, any due process claim against Defendant Heaward with regard to Plaintiff's infraction hearing is without merit.  In addition, the evidence reflects that the infraction was dismissed and therefore, Plaintiff suffered no adverse consequences as a result of the infraction or the hearing on the infraction.

To the extent Plaintiff asserts that he was denied due process because he did not receive a hearing prior to his classification change, his claim is also without merit.  In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  *Sandin v. Connor,* 515 U.S. 472, 115 S. Ct. 2293, 2300, 132 L.Ed.2d 418 (1995).  An inmate has no constitutional right to a particular classification score.  *See Moody v. Daggett*, 429 U.S. 78, 87 n. 9, 97 S. Ct. 274, 50 L.Ed.2d 236 (1976).  Plaintiff does not have a protected liberty interest in a particular classification.  *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir.1987).   Thus, Plaintiff does not have a due process right to some sort of procedure prior to a change in his classification level.

Plaintiff alleges that the decision to change his classification level was based on false reports relating to the March 4, 2009 incident.  However, the infraction issued as a result of the March 4, 2009 incident was dismissed and Plaintiff was not disciplined as a result of that infraction.  In addition, Defendant Moseley states that his recommendation to change Plaintiff's

REPORT AND RECOMMENDATION - 12

classification level was based on Plaintiff's overall attitude and because Plaintiff had received six serious infractions in a period of eight months.  Defendant Moseley states further that the six serious infractions did not include the infraction Plaintiff received for the March 4, 2009 incident.  ECF No. 130-1, Exh. 5, ¶ 5.  Plaintiff does not dispute that he received six serious infractions in a period of eight months.

Viewing the summary judgment evidence in the light most favorable to Plaintiff, the undersigned concludes that Plaintiff has failed to raise a material issue of fact relating to his claims that he was denied due process.  Accordingly, it is recommended that Plaintiff's Fourteenth Amendment claims against Defendants Heaward and Moseley be dismissed with prejudice.

**C.    Retaliation Claim**

As noted above, Plaintiff alleges that he was assaulted and his classification was changed to close custody in retaliation for his grievances and litigation against prison guards Christensen and Kettle.

The Ninth Circuit has consistently held that prison staff may not retaliate against inmates for exercising their constitutional rights to file lawsuits and grievances.  *Rizzo v. Dawson*, 778 F.2d 527 (9th Cir. 1983); *Barnett v. Centoni*, 31 F.3d 813 (9th cir. 1994); *Pratt v. Rowland*, 65 F.3d 802 (9th Cir. 1995); *Rhodes v. Robinson*, 408 F.3d 559 (9th Cir. 2005).  In order to establish a retaliation claim, an inmate must show that: 1) a state actor took some adverse action against the inmate; 2) because the inmate engaged in constitutionally protected conduct; 3) the adverse action chilled the inmate's exercise of First Amendment rights; and, 4) the adverse action did not reasonably advance a legitimate correctional goal.  *Rhodes*, 408 F.3d at 567-68.

REPORT AND RECOMMENDATION - 13

It is undisputed that Plaintiff filed suit in September 15, 2008 against prison guards Michael Christensen, Jeff Kettel and Eric Young in Case No. C08-5553RJB.  It is undisputed that Plaintiff has a clearly established right to be free of retaliation for exercising his First Amendment rights.  See *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989); *Carepartners LLC v. Lashway*, 545 F.3d 867, 877 (9th Cir. 2008).   Thus, for purposes of this motion, the court will assume that Plaintiff was engaged in constitutionally protected conduct at the time of the alleged adverse action.

In order to prevail on his First Amendment retaliation claims, Plaintiff must next show that the protected conduct was a substantial or motivating factor in the defendants' conduct. *Carepartners*, 545 F.3d at 877.   Only after he makes this initial showing does the burden shift to the Defendants to establish that they would have reached the same decision even in the absence of the protected conduct.  *Id.*

Retaliation is not proven by simply showing that a defendant prison official took adverse action after he knew that the plaintiff prisoner had engaged in constitutionally protected activity. Although timing can be considered as circumstantial evidence of retaliatory event, timing alone cannot establish retaliation. *See Pratt v. Rowland*, 65 F.3d at 808.   As noted by one district court, "merely being aware of ongoing litigation does not establish that all adverse actions taken thereafter are retaliatory."  *Estrada v. Gomez*, 1998 WL 514068 * 3 (N.D. Cal. 1998).   The overall circumstances of the alleged retaliation must be considered and not simply the order of events.  *Id.*  The *Estrada* court's comments on inferring retaliatory motive through timing alone are instructive:

> The oversimplified "timing and knowledge" analysis has numerous problems.  First, it presumes vindictiveness by the prison guard.  Second, it elevates a prisoner who exercises his constitutional rights to a higher status: e.g.,

REPORT AND RECOMMENDATION - 14

if a guard refuses to serve lunch to a prisoner who told him he filed a grievance and to a prisoner who had not done so, the former would have a retaliation claim and the latter would not.  Third, it encourages litigiousness because, with planning, a prisoner could have constant federal court supervision of his tenure in prison.  An industrious prisoner could file a grievance when he arrived at prison and perhaps weekly thereafter, broadcast his grievance-filing activities widely, and then file federal civil rights actions claiming that every later adverse action by a guard was retaliatory.  The court would be asked to pass on the legitimacy of all actions the prisoner did not like.  Fortunately, a closer look at the law of retaliation shows that the standard is slightly higher and the claim is not so susceptible to manipulation.

*Id.* at n. 2.

With regard to Plaintiff's claim that Defendants retaliated against him by assaulting him, Plaintiff offers no evidence that any of the Defendants, except Defendants McLean and Stark, were even aware that he had filed grievances and/or a lawsuit against prison guards Christensen and Kettel, or that they were motivated by a desire to retaliate against him.  Defendants Reno, McLean and Stark, who were involved in the use of force on March 4, 2009 state in their declarations that they did not yell "your [sic] going down, this is for all the grievances and the law suit [sic] you filed on Christensen and Kettle," (ECF No. 48, pp. 4-5), and they did not hear any other officer make such a statement.  ECF No. 130-1, Exhs. 1-3.  As noted above, however, the facts contained in Plaintiff's verified complaint dispute the foregoing as to Defendants McLean and Stark.  Plaintiff alleges that Defendant McLean beat him and that while he was beating Plaintiff, Defendant McLean told him that the beating was because Plaintiff had sued Christensen and Kettel.  He further alleges that others were beating him at the time the statement was made.  Considering the facts in the light most favorable to the Plaintiff, it appears the group acted in concert and it is reasonable to attribute the purpose of the beating as retaliation by the group for the reasons stated.  Thus, Plaintiff has raised a genuine issue of material fact as to Defendants McLean and Stark.

REPORT AND RECOMMENDATION - 15

Plaintiff has shown no retaliatory motive for the change in his classification statute.  The undisputed summary judgment evidence reflects that he was changed to close custody status based on his own behavior in receiving six serious infractions in eight months.

Accordingly, the undersigned recommends that Defendants' summary judgment motion on Plaintiff's retaliation claim be granted, except as to Plaintiff's claims against Defendants McLean and Stark.

**D.      Personal Participation of Defendants Ramsey, Vail, Fraker, and Zavodny**

In order to obtain relief against a defendant under 42 U.S.C. § 1983, a plaintiff must prove that the particular defendant has caused or personally participated in causing the deprivation of a particular protected constitutional right.  *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (1977).  To be liable for "causing" the deprivation of a constitutional right, the particular defendant must commit an affirmative act, or omit to perform an act, that he or she is legally required to do, and which causes the plaintiff's deprivation.  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.  *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *see also Rizzo v. Goode*, 423 U.S. 362, 370-71, 375-77 (1976).  Sweeping conclusory allegations against an official are insufficient to state a claim for relief.  The plaintiff must set forth specific facts showing a causal connection between each defendant's actions and the harm allegedly suffered by plaintiff.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Rizzo*, 423 U.S. at 371.

Defendants in a 42 U.S.C. § 1983 action cannot be held liable based on a theory of *respondeat superior* or vicarious liability.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981);

REPORT AND RECOMMENDATION - 16

1    *Bergquist v. County of Cochise*, 806 F.2d 1364, 1369 (9th Cir. 1986).  "At a minimum, a § 1983

2    plaintiff must show that a supervisory official at least implicitly authorized, approved, or

3    knowingly acquiesced in the unconstitutional conduct."  *Bellamy v. Bradley*, 729 F.2d 416, 421

4    (6th Cir. 1984), *cert. denied*, 469 U.S. 845 (1984).  A defendant cannot be held liable under 42

5    U.S.C. § 1983 solely on the basis of supervisory responsibility or position. *Monell v. New York*

6    *City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978); *Padway v. Palches*, 665 F.2d 965

7    (9th Cir. 1982).  Vague and conclusory allegations of official participation in civil rights

8    violations are not sufficient.  *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).  Absent some

9    personal involvement by the defendants in the allegedly unlawful conduct of subordinates, they

10   cannot be held liable under § 1983.  *Johnson*, 588 F.2d at 743-44.

11        In his Fourth Amended Complaint, Plaintiff states no allegations against Defendants

12   Ramsey, Vail or Fraker.   In a document titled "Memorandum in Support of Complaint Exhibits

13   Constitution Violation 8 and 14 Amendment," (ECF No. 47), Plaintiff alleges that "Ron Fraker

14   and Eldon Vail, personally had a job to do and did not do their job," and alleges that they failed

15   to supervise the other Defendants.  Defendants Fraker and Vail cannot be held liable in this case

16   under a theory of *respondeat superior*.  *See Polk, supra* and *Padway, supra*.

17        Plaintiff's claims against Defendant Ramsey are likewise unsupportable.  Plaintiff

18   alleges: "Even after I informed Ad Seg Mosly [sic] Alva, Dan Palkoky, Steve Ramsey, Ronald

19   Fraker, that I was found not guilty and McLean (defendant) did not write any reports…defendant

20   still used false dismissed reports on referral to place me on ad seg to keep me from law library

21   and research book's [sic] etc."   ECF No. 47, p. 2.  This vague, conclusory allegation does not

22   demonstrate that Defendant Ramsey personally participated in any constitutional deprivation.

REPORT AND RECOMMENDATION - 17

Finally, Plaintiff's claims against Defendant Zavodny are without merit.  Defendant Zavodny states in his declaration that he was not involved in the incident of March 4, 2009 involving Plaintiff and the Plaintiff provides no evidence to dispute this.

Accordingly, the undersigned recommends that Plaintiff's claims against Defendants Ramsey, Vail, Fraker, and Zavodny be dismissed with prejudice.

**E.      Eleventh Amendment Immunity – Claims Against Eldon Vail**

The Eleventh Amendment to the United States Constitution bars citizens from bringing lawsuits against states in federal courts.  *See Welch v. Texas Dep't of Highways and Pub. Transp.*, 483 U.S. 468, 472-73 (1987) (plurality opinion); *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).  A state agency is not a "person" under 42 U.S.C. § 1983, nor is a state official acting in his or her official capacity.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."  *Id.* (citations omitted); *see Edelman*, 415 U.S. at 662-63.  The claims Plaintiff has brought against Defendant Vail appear to have been brought because of his position as Secretary. Because Plaintiff's claims are brought against Defendant Vail in his official capacity based on his position and not on any participation in the acts alleged, Defendant Vail is subject to Eleventh Amendment immunity and should be dismissed from this lawsuit.

**F.      Qualified Immunity**

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'"  *Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L.Ed.2d 411 (1985)).  The court evaluates a defendant's qualified immunity defense using a two-step inquiry.  *Id.*

REPORT AND RECOMMENDATION - 18

However, the Supreme Court recently held that this two-step inquiry is no longer an inflexible requirement.  *Pearson v. Callahan*, ---U.S. ---, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009) (explaining "that, while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory").  It is within our "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id*.

Under *Saucier's* first prong, the court must determine whether, viewing the facts in the light most favorable to the plaintiff, the government employees violated the plaintiff's constitutional rights.  *Saucier*, 533 U.S. at 201, 121 S. Ct. 2151.  If the court determines that a constitutional violation has occurred, under *Saucier's* second prong, it must determine whether the rights were clearly established at the time of the violation.  *Id*.  For a right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates the right."  *Id*. at 202, 121 S. Ct. 2151 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L.Ed.2d 523 (1987)).  The protection afforded by qualified immunity "safeguards 'all but the plainly incompetent or those who knowingly violate the law.'"  *Brewster v. Bd. of Educ. of the Lynwood Unified Sch. Dist*., 149 F.3d 971, 977 (9th Cir.1998) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

The court has concluded that Plaintiff has failed to raise material issues of fact relating to his claims that Defendants Vail, Fraker, Reno, Zovodny, Ramsey, Mosely, and Heaward violated his constitutional rights.  Therefore, it is not necessary to address these Defendants' qualified immunity arguments.

REPORT AND RECOMMENDATION - 19

Defendants McLean and Stark argue that they could have reasonably believed that they acted reasonably in using force to restrain Plaintiff when Plaintiff was being aggressive, assaultive, belligerent, and threatening, particularly because Plaintiff physically assaulted Defendant McLean.  However, as noted above, there are issues of material fact surrounding Plaintiff's compliance with staff directives and whether Defendants McLean and Stark were motivated by malice and retaliation.

Questions of qualified immunity should be resolved as a matter of law when the facts are clear; however, disputed issues of material fact concerning the knowledge and conduct of the officers in question prevent such a legal resolution.  Where the conduct of the defendants' entitlement depends on the resolution of disputed issues of fact in their favor, summary judgment is not appropriate.  *See, e.g., Wilkins v. City of Oakland,* 350 F.3d 949, 951 (9th Cir. 2003) ("Where disputed facts exist, we will determine if the denial of qualified immunity was proper by assuming that the version of events offered by the non-moving party is correct."); *Martinez v. Stanford,* 323 F.3d 1178, 1184 (9th Cir. 2003) ("The district court erred in its analysis of the reasonableness inquiry of the second *Saucier* prong because it failed to view the evidence in the light most favorable to the plaintiff, and instead resolved all material disputes in favor of the officer[.]") (citation omitted).  The inquiry in such a case "is not a legal inquiry, but rather a question of fact best resolved by the jury."  *Wilkins*, 350 F.3d at 955.

Here, there are genuine issues of material fact regarding the scope and necessity of the force used and the malicious and retaliatory nature of the alleged conduct.  When the evidence is construed in Plaintiff's favor, the court must reject the argument that Defendants McLean and Stark acted reasonably in removing Plaintiff from his cell because there is some evidence that Defendants McLean and Stark assaulted Plaintiff even though Plaintiff was complying with the

REPORT AND RECOMMENDATION - 20

directive to exit his cell and that Defendants McLean and Stark assaulted Plaintiff because Plaintiff had sued other corrections officers.

Accordingly, the court cannot find that Defendants McLean and Stark are protected by qualified immunity at this stage.  The court notes, however, that a defense of qualified immunity is still possible, but only after the facts relating to the incident of March 4, 2009 have been fully developed.

## CONCLUSION

For the reasons stated above, the undersigned recommends that Defendants' motion for summary judgment (ECF No. 130) be **GRANTED, except as to Plaintiff's claims of excessive force and retaliation against Defendants James B. McLean and Malcolm Stark.**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **April 29, 2011,** as noted in the caption.


**DATED** this  11th  day of April, 2011.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 21